Filed 6/9/14  In re Alejandro C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| In re ALEJANDRO C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALEJANDRO C.,<br><br>Defendant and Appellant. | F068383<br><br>(Super. Ct. No. JJD066728)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Juliet L. Boccone, Judge.

Karriem Baker, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Gomes, Acting P.J., Kane, J., and Poochigian, J.

It was alleged in a juvenile wardship petition that appellant, Alejandro C., a minor, committed assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1), count 1)[1] and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4), count 2); that he committed both offenses for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members (§ 186.22, subd. (b)(1));[2] and that he was subject to the punishment provisions of section 186.22, subdivision (b)(1)(C).[3] Following a contested jurisdiction hearing, the juvenile court found true the count 2 assault and gang enhancement allegations. The court found the count 1 assault allegation not true.

At the subsequent disposition hearing, the juvenile court adjudged appellant a ward of the court; placed appellant on probation; ordered him committed to the Tulare County Youth Facility for 365 days, with that commitment stayed pending successful completion of probation; ordered that appellant reside in the custody of his parents; and modified the true finding on the gang enhancement to reflect that appellant was subject to the punishment provisions set forth in section 186.22, subdivision (b)(1)(A).[4]

---

[1]     All statutory references are to the Penal Code.

[2]     Section 186.22, subdivision (b)(1) provides for a sentence enhancement, to which we refer as the gang enhancement, for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members …."

[3]     The prescribed punishment for the gang enhancement is two, three, or four years at the court's discretion (§ 186.22, subd. (b)(1)(A)), unless the underlying felony is a serious felony (§ 1192.7, subd. (c)), in which case the punishment is a term of five years (§ 186.22, subd. (b)(1)(B)), or a violent felony (§ 667.5, subd. (c)), in which case the punishment is a term of 10 years (§ 186.22, subd. (b)(1)(C)).

[4]     See footnote 3, *ante*.

Appellant's appellate counsel has filed an opening brief which summarizes the pertinent facts, with citations to the record, raises no issues, and asks that this court independently review the record. (*People v. Wende* (1979) 25 Cal.3d. 436.) Appellant has not responded to this court's invitation to submit additional briefing. We affirm.

**FACTS**

*Instant Offenses and Gang Enhancement*

Evan S. (Evan), a high school student, "heard a story" from a girl in his class that appellant, who at the time was a friend of Evan's, and some of appellant's friends "had jumped somebody."[5] Evan told the girl that in his opinion a person who "jump[s] somebody" is a "[p]ussy." At some point thereafter, in January 2013, appellant confronted Evan and asked him if he (Evan) "was talking shit about his gang or him." Evan said "no." At some point after that, Evan and appellant had another "argument," as a result of which Evan "end[ed] up dealing with school administration[.]" As Evan was leaving school that day, appellant and some of his friends "called [Evan] a rat" and said Evan "was going to get what's coming to [him]."

Approximately two weeks later, on January 25, 2013, Sean W., with whom Evan was acquainted, telephoned Evan and told him Evan's girlfriend was at Sean's house and that she wanted to talk to Evan. Sean picked up Evan and drove him to his (Sean's) house. When Evan arrived, there were approximately 16 people there, some of whom he knew from school. At Sean's direction he walked into the backyard of the house, at which point he "got hit" in the back of the head with what he thought was a metal object, and he fell to the ground. As he was falling, he "recognize[d] people behind [him]." He was "pretty sure" it was appellant who hit him. While he was on the ground his attackers

---

[5]     Our factual summary of the instant offenses is taken from Evan's testimony.

3

were "stomping on [his] face and socking [him] up." Appellant was "kicking [Evan] in [his] head and socking."

At some point while the attack was still going on, a friend of Evan's emerged from the house and told the attackers to stop. They stopped "for a minute," and Evan "got up and ran away."

Approximately seven people attacked Evan. Some were wearing red bandannas, and Evan heard someone say, "How do you feel about talking shit about me and my homies? What do you have to say about norte now?"

### Gang Evidence

City of Tulare Police Detective Tony Espinosa testified to the following. He is currently assigned to the "gang unit." There are approximately 300 to 350 members of the Norteño gang in the City of Tulare. They "wear a particular color," viz., red, and they "support [a] particular number," viz., 14, which represents the letter "N," the 14th letter of the alphabet. The "primary activities of Nortenos" are "drive-by shootings, homicide, attempted homicide, assault, assault with a deadly weapon, drug sales, witness intimidation, graffiti." "Sureno street gangs" are rivals of the Norteños.

Desiree Morales, a Norteño gang member, was convicted of assault committed on or about March 9, 2012, and Manden Torres, also a Norteño gang member, was convicted of attempted murder, committed on or about March 9, 2011.

Based in part on school records that indicated appellant wore red, associated with Norteño gang members and "verbally … assaulted" a member of the Sureño gang, calling him a "scrap," a derogatory term used by members of the Norteño gang to insult members of the Sureño gang, Espinosa opined that appellant was an "active northern gang member." In response to a hypothetical question that tracked the facts as testified to by Evan, Espinosa further opined that the assault on Evan "would [have been in] furtherance of [appellant's] gang" and would have benefited appellant's gang by

4

"[e]levation of their status within the community, showing they would not be disrespected."

## DISCUSSION

Following independent review of the record, we have concluded that no reasonably arguable legal or factual issues exist.

## DISPOSITION

The judgment is affirmed.